IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


LISA VARNEDOE ROWELL,       )
                                          )
                     Plaintiff,      )
                                          )
          vs.                        )
                                          )
CAROLYN W. COLVIN, acting    )
Commissioner, Social Security    )
Administration,               )
                                        )     No. 3:14-cv-0100-HRH
                     Defendant.    )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff has timely filed her opening

brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not

deemed necessary.

Procedural Background

Plaintiff is Lisa Varnedoe Rowell. Defendant is Carolyn W. Colvin, acting

Commissioner of Social Security.

_____

[1]Docket No. 16.

[2]Docket No. 17.

-1-

In 2005, plaintiff filed an application for disabled widow's benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act. Plaintiff alleged that she became disabled on September 2, 1998. These applications were denied initially and upon review. After a hearing on July 12, 2006, an administrative law judge (ALJ) denied plaintiff's claims. Plaintiff did not appeal the ALJ's June 19, 2008 unfavorable decision.

On November 5, 2008, plaintiff filed a second application for disability benefits under Title XVI of the Social Security Act. Plaintiff again alleges that she became disabled on September 2, 1998. Plaintiff alleges that she is disabled due to arthritis, liver disease, hepatitis C, hypertension, overactive bladder, overactive bowel, acid reflux disease, nerve damage to her lower extremities, scoliosis, and left leg fracture. Plaintiff's application was denied initially and upon reconsideration. A hearing was held on June 12, 2010, and on August 23, 2010, an ALJ denied plaintiff's claim. On November 11, 2011, the Appeals Council remanded plaintiff's case to the ALJ because there was new evidence from plaintiff's treating source as to her functional capacity, because the ALJ had not provided adequate reasons for finding plaintiff's subjective complaints less than credible, and because the ALJ erred in finding that plaintiff could perform her past relevant work as an administrative clerk and trucking terminal manager as generally performed.[3]

_____

[3]Admin. Rec. at 126.

Upon remand, after a hearing on May 24, 2012, the ALJ again denied plaintiff's claim. On March 28, 2014, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's December 11, 2012 decision the final decision of the Commissioner. On May 23, 2014, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on March 7, 1954. She was 56 years old at the time of the June 2010 hearing. Plaintiff has a GED. Plaintiff lives in an apartment. Plaintiff's past relevant work includes work as an administrative office clerk and a self-employed trucking manager. Plaintiff also ran her own fishing tackle business.

## The ALJ's Decision

The ALJ first found that res judicata applied to plaintiff's claim for the period of September 2, 1998 through June 19, 2008, the date on which ALJ "William H. Grier issued a decision ... and found [plaintiff] not disabled...."[4] Thus, the ALJ did "not consider the period from September 2, 1998 through June 19, 2008" and his "decision [was] relevant only to the period beginning June 20, 2008 through the date of [his] decision...."[5]

---

[4]Admin. Rec. at 19.

[5]Admin. Rec. at 20.

The ALJ then applied the five-step sequential analysis used to determine whether

an individual is disabled.[6]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful

activity since November 5, 2008, the application date...."[7]

At step two, the ALJ found that plaintiff had "the following severe impairments:

hepatitis C with cirrhosis of the liver, peripheral neuropathy of the lower extremities,

---

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[7]Admin. Rec. at 21.

hypertension, GERD..., and status post left tibial fracture...."[8]  The ALJ found that plaintiff's

scoliosis was non-severe.[9]  The ALJ also found plaintiff's major depressive disorder non-

severe.[10]  The ALJ considered the "paragraph B" criteria and found that plaintiff had no

limitations as to activities of daily living; no limitations as to social functioning; no

limitations as to concentration, persistence, or pace; and no episodes of decompenation.[11]

At step three, the ALJ found that plaintiff did "not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[12]  The ALJ considered Listing

5.05 (chronic liver disease); Listing 11.14 (peripheral neuropathies); and Listing 1.06

(fracture of the femur, tibia, pelvis, or one or more of the tarsal bones).[13]

Between steps three and four, the ALJ must, as an intermediate step, assess the

claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009).

 The ALJ found that plaintiff had

---

[8]Admin. Rec. at 22.

[9]Admin. Rec. at 22.

[10]Admin. Rec. at 22.

[11]Admin. Rec. at 22-23.

[12]Admin. Rec. at 23.

[13]Admin. Rec. at 23-24.

the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[14] except no climbing of ladders, ropes, or scaffolds; must avoid all exposure to unprotected heights and moving and hazardous machinery; and requires a sit/stand option allowing her to alternate sitting or standing positions at one hour intervals throughout the day.[15]

The ALJ found plaintiff's pain and symptom statements less than credible because they were not consistent with the medical evidence, treatment providers' observations, or the nature of her treatment;[16] because "her earnings records reveal more income in 2001 and 2002 than in all her previous years of work combined", even though plaintiff alleged a onset date of September 2, 1998;[17] because plaintiff had only a sporadic work history "prior to the alleged disability onset date, which raises a question as to whether the

---

[14]Section 416.967(b) provides, in pertinent part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

[15]Admin. Rec. at 24.

[16]Admin. Rec. at 26-28.

[17]Admin. Rec. at 29.

claimant's continuing employment is actually due to medical impairments[;]"[18] and because she made inconsistent statements.[19]

The ALJ gave little weight to Dr. Bell's statements[20] because "Dr. Bell [did not] specify what symptoms or limitations the claimant experiences as a result of her impairments...."[21] The ALJ also gave little weight[22] to Dr. Flynn's opinion.[23] The ALJ gave no weight[24] to Dr. Mraz's opinion[25] because it was conclusory and unsupported. The ALJ

---

[18]Admin. Rec. at 29.

[19]Admin. Rec. at 29.

[20]Dr. Bell was plaintiff's PCP from June 2009 through October 2010. On October 20, 2010, Dr. Bell wrote that plaintiff

> has Hepatitis C with liver cirrhosis, likely terminal. We are working to get her evaluated by a hepatologist for further evaluation and recommendations, but due to her financial situation she has had difficulty setting that up. She has a number of complications associated with this diagnosis.

Admin. Rec. at 318.

[21]Admin. Rec. at 31.

[22]Admin. Rec. at 31.

[23]Dr. Flynn became plaintiff's PCP in August 2011. His opinion is discussed in detail below.

[24]Admin. Rec. at 31.

[25]Dr. Mraz saw plaintiff once in September 2008. Admin. Rec. at 399-401. On November 3, 2008, Dr. Mraz completed a Disability Verification form on which he indicated

(continued...)

discussed Dr. Bock's opinion[26] and rejected plaintiff's argument that Dr. Bock's opinion

---

[26]Jacqueline Bock, Ph.D. examined plaintiff on August 23, 2012. Dr. Bock opined that

> it is likely that [plaintiff] is able to engage in some kind of gainful employment. Ms. Rowell reported that she assisted her husband in his work as a long-haul trucker; it also appears that she may have been financially reliant on her late husband's employment. She did not report having a Commercial Driver's License herself; in fact, a taxi-cab brought her to the evaluation. Again, the patient reported chronic diarrhea and bowel and bladder urgency that prevents her from venturing out into public places even to go to the store; these difficulties were not observed during her time at this office. Ms. Rowell would benefit from vocational training in order to assist her in entering the workforce. Ms. Rowell's depression appears to be related to mild and specific situations in her life; Major Depressive Disorder, mild, recurrent, Bereavement, and consideration for Malingering via overstating health problems for purposes of obtaining Social Security benefits are appropriate diagnoses. Resolving Ms. Rowell's financial and medical situation, developing a positive and appropriate social support system, and reentering the workforce would be in her benefit.
>
> Based on the results of this interview and mental status examination, [it] is believed that Ms. Rowell is indeed able to function adaptively, make reasonable personal and social adjustments, and to manage monies and make financial decisions in her best interest. Although she would probably benefit from mental health counseling ..., [it] is unlikely that her depression and bereavement alone stand[] in the way of her ability to receive training or to be gainfully employed.

(continued...)

should be given no weight, but the ALJ did not indicate what weight he was giving Dr. Bock's opinion.[27]  And, the ALJ gave great weight to Dr. Spence's opinion.[28]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as an office clerk....."[29]  This finding was based on the testimony of the vocational expert.[30]

Although not required to, the ALJ made alternative step five findings.  The ALJ found that "there are other jobs existing in the national economy that [plaintiff] is also able to perform."[31]  Based on the testimony of the vocational expert, the ALJ found that plaintiff could work as a credit card control clerk.[32]

---

[26](...continued)
Admin. Rec. at 339.

[27]Admin. Rec. at 31-32.

[28]Admin. Rec. at 32.  Dr. Spence, who is "board certified in internal medicine [and] pulmonary disease and critical care," testified as a medical expert at the May 24, 2012 hearing.  Admin. Rec. at 44.  Dr. Spence's opinion is discussed in detail below.

[29]Admin. Rec. at 32.

[30]Admin. Rec. at 33.  Daniel Labrosse testified as the vocational expert at the May 24, 2012 hearing.  Admin. Rec. at 54-65.

[31]Admin. Rec. at 33.

[32]Admin. Rec. at 34.

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, since November 5, 2008, the date the application was filed...."[33]

### Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[33]Admin. Rec. at 34.

Plaintiff first argues that the ALJ erred in rejecting Dr. Flynn's opinion. On August 22, 2011, Dr. Flynn opined that plaintiff could sit for 8 hours, stand/walk for 0-1 hours; would need to be able to get up and move hourly; could frequently lift 10 pounds, occasionally lift 20 pounds, occasionally carry 10 pounds, and frequently carry 5 pounds; had pain that would constantly interfere with her attention and concentration; was incapable of tolerating even low stress work because she could not be expected to show up on time for any work duties; and should avoid fumes.[34] And on July 11, 2012, Dr. Flynn wrote that his August 2011 opinion "remain[ed] accurate and valid to date."[35]

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr.

---

[34]Admin. Rec. at 321-326.

[35]Admin. Rec. at 571.

Flynn's opinion was contradicted by the opinions of Dr. Bock and Dr. Spence and thus the ALJ was required to give specific and legitimate reasons for rejecting Dr. Flynn's opinion.

The ALJ gave little weight to Dr. Flynn's opinion because his "treating relationship with [plaintiff] appears to have been limited to one visit[,] the clinical evidence Dr. Flynn cites to support his opinion is at best minimal and, ... the medical evidence simply does not reveal objective findings to support his opinion regarding [plaintiff's] alleged lower extremity neuropathy and cognitive deficits."[36] Plaintiff argues that these were not specific and legitimate reasons.

As for the first reason, there is no dispute that Dr. Flynn only examined plaintiff once.[37] An ALJ may consider the "'[l]ength of the treatment relationship and the frequency of examination'" when deciding how much weight to give a treating physician's opinion. Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting C.F.R. § 404.1527(c)(2)). Nonetheless, plaintiff argues that this was not a legitimate reason to reject Dr. Flynn's opinion because Dr. Flynn noted that plaintiff had "been treated by other providers at my clinic since December 2008."[38] Plaintiff contends that this is an indication that Dr. Flynn

---

[36]Admin. Rec. at 31.

[37]Admin. Rec. at 569.

[38]Admin. Rec. at 571.

-12-

had access to her treatment records, which means that his opinion was not based simply on one visit.

But even if his opinion were based on only one examination, plaintiff argues that makes Dr. Flynn an examining physician and she points out that the opinion of an examining physician can also only be rejected for specific and legitimate reasons. <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692 (9th Cir. 2009). And, plaintiff insists that the other reasons given by the ALJ for rejecting Dr. Flynn's opinion were not legitimate.

The second reason the ALJ gave was that the clinical evidence supporting Dr. Flynn's opinion was "at best minimal."[39] On the form that Dr. Flynn filled out in August 2011, he indicated that plaintiff's positive clinical findings were edema and an enlarged liver and that the laboratory and diagnostic tests supporting his opinion were "positive hepatitis C serology [and] elevated liver enzymes."[40] In July 2012, Dr. Flynn noted that plaintiff's diagnoses were "supported by elevated liver enzymes, positive hepatitis C serology, and positive clinical findings of an enlarged liver and edema."[41] The ALJ found that there was no evidence in the record of liver enlargement and noted that plaintiff only

---

[39]Admin. Rec. at 31.

[40]Admin. Rec. at 433-434.

[41]Admin. Rec. at 571.

had edema on two occasions.[42]  Plaintiff argues that there was evidence in the record of liver enlargement.  Plaintiff contends that Dr. Bell's note that the "[l]iver edge is felt approximately 3cm below the right costal margin" is evidence of liver enlargement.[43]  As for the edema, while plaintiff concedes that edema was only found on two occasions, she argues that this is not a reason to discount its clinical significance, "especially in light of the relatively few examinations contained in th[e] record[.]"[44]  But, all plaintiff's arguments do is highlight the problem that the ALJ found here, which is that the clinical evidence supporting Dr. Flynn's opinion was minimal.  An ALJ may properly discount an opinion that is "unsupported by clinical findings...."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The lack of clinical findings supporting Dr. Flynn's opinion was a legitimate reason for rejecting that opinion.

The ALJ also noted that Dr. Flynn cited lab results (a positive test for hepatitis C and elevated liver enzymes) as support for his opinion as to plaintiff's functional limitations. But, the ALJ concluded that these lab results did not necessarily mean that plaintiff had the symptoms she claimed (constant pain in the lower extremities, memory loss, fatigue, and

---

[42]Admin. Rec. at 30.

[43]Admin. Rec. at 416

[44]Plaintiff's Opening Brief at 15, Docket No. 16.

confusion).  In other words, the ALJ concluded, based on Dr. Spence's testimony,[45] that just

because plaintiff had hepatitis C and liver disease that did not mean that she had

symptoms that would result in the limitations Dr. Flynn assessed.  Plaintiff takes issue with

this conclusion, arguing that while the symptoms of which she complains are not specific

to cirrhosis, they are classically associated with cirrhosis.  She argues that while these

symptoms by themselves would not tell a clinician very much about their etiology, in

combination with positive serology and elevated liver enzymes, there should have been

little doubt as to what is causing these symptoms.  Thus, plaintiff insists that her lab results

do correlate to her symptoms.

While plaintiff's contention might be a reasonable interpretation of the medical

evidence, so is the ALJ's interpretation, which was based on Dr. Spence's testimony.  When

the medical evidence in a case is susceptible to different interpretations, "it is the ALJ's

conclusion that must be upheld."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599

(9th Cir. 1999).

The third reason given by the ALJ, that "the medical evidence simply does not

reveal objective findings to support [Dr. Flynn's] opinion regarding [plaintiff's] alleged

---

[45]Dr. Spence testified that plaintiff "did not relate any clear-cut symptoms that
would indicate clinical manifestation of her liver disease."  Admin. Rec. at 46.

lower extremity neuropathy and cognitive deficits,"[46] was also a legitimate reason to reject Dr. Flynn's opinion. The ALJ correctly noted that there were no "EMG/NCV study results or clinical evidence of lower extremity sensory abnormalities" and that there were no clinic findings to support any cognitive deficits.[47]

In sum, the ALJ's reasons for rejecting Dr. Flynn's opinion were specific and legitimate. The ALJ did not error as to Dr. Flynn's opinion.

Plaintiff next argues that the ALJ erred as to Dr. Spence's opinion. Dr. Spence opined that plaintiff "could probably lift 20 pounds occasionally and carry 5 to 10 pounds occasionally[,] she'd be able to sit for eight hours, stand and walk anywhere up to about an hour, and she would also have to be up and about, not sitting, on an hourly basis."[48] Dr. Spence also opined that plaintiff had no limitations as to manipulation, that she should never climb ladders/scaffolds, and that she should avoid exposure to hazards.[49] And, Dr. Spence opined that plaintiff "could ... at least function at a sedentary level of work."[50] The ALJ gave Dr. Spence's opinion great weight.

---

[46]Admin. Rec. at 31.

[47]Admin. Rec. at 30-31.

[48]Admin. Rec. at 49.

[49]Admin. Rec. at 49-50.

[50]Admin. Rec. at 48-49.

But, plaintiff argues that if the ALJ were going to give Dr. Spence's opinion great weight, then the ALJ should have found that she was limited to sedentary work, not light work. Dr. Spence opined that plaintiff could do "at least" sedentary work, which might suggest that plaintiff could do more than sedentary work. But, the specific limitations that Dr. Spence found would have limited plaintiff to sedentary work. Thus, plaintiff argues that the ALJ's RFC for light work was not supported by substantial evidence.

But even if the ALJ erred in finding that plaintiff could perform light work, rather than sedentary work, that error would be harmless because of the ALJ's alternative step five findings. "An error is harmless if it is "inconsequential to the ultimate nondisability determination[.]" Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)). The ALJ found that "there are other jobs existing in the national economy that [plaintiff] is also able to perform."[51] Based on the testimony of the vocational expert, the ALJ found that plaintiff could work as a credit card control clerk,[52] which the ALJ indicated was light work. However, the Dictionary of Occupational Titles lists this job, DOT No. 249.367-026, as sedentary work, which is consistent with the vocational expert's testimony.[53] Thus, even

---

[51]Admin. Rec. at 33.

[52]Admin. Rec. at 34.

[53]Admin. Rec. at 57-58.

if plaintiff were limited to sedentary work, the ALJ found that she would not be disabled because there was sedentary work that she can perform.

Finally, plaintiff argues that the ALJ erred in finding her pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v.

Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]"  Id. at 1112-13 (internal citations omitted).  "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. at 1113.

The ALJ found plaintiff's pain and symptom statements less than credible because they were not consistent with the medical evidence, treatment providers' observations, and the nature of her treatment;[54] because "her earnings records reveal more income in 2001 and 2002 than in all her previous years of work combined", even though plaintiff alleged

_____

[54]Admin. Rec. at 26-28.

a onset date of September 2, 1998;[55] because plaintiff had only a sporadic work history "prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing employment is actually due to medical impairments[;]"[56] and because she made inconsistent statements.[57] Plaintiff argues that these were not clear and convincing reasons.

As for the first reason, whether plaintiff's pain and symptom testimony was consistent with the objective medical evidence, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]" Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). This can only be a valid reason for finding plaintiff's statements less than credible if some of the other reasons given by the ALJ were proper.

As for the second reason, the ALJ found that plaintiff's statements related to her hepatitis C and cirrhosis, and her "allegations of disabling bilateral leg and foot pain, numbness, and swelling"[58] were not consistent with observations made by her treatment providers. The ALJ found that plaintiff only complained to her providers of "fatigue and

---

[55]Admin. Rec. at 29.

[56]Admin. Rec. at 29.

[57]Admin. Rec. at 29.

[58]Admin. Rec. at 27.

malaise in general" and did not complain of other "symptoms commonly associated with liver disease, such as weakness, loss of appetite, nausea, vomiting, unintentional weight loss,[59] and abdominal pain and bloating...."[60] As for plaintiff's complaints about her legs, the ALJ noted that two providers observed that plaintiff walked with a slight limp, but that the other treatment notes in the record do not reflect that her leg pain affected her ability to walk.[61] The ALJ mentioned that Dr. Bell had found lower extremity edema and prescribed compression stockings[62] but the ALJ also noted that the stockings were effective in treating plaintiff's lower leg pain.[63] This was a clear and convincing reason to find plaintiff's statements less than credible.

As for the third reason, that plaintiff's statements were not consistent with the level of treatment she received, the record indicates that plaintiff did not receive treatment due to financial constraints. The record shows that plaintiff has been unable to see a hepatologist and has had to limit the testing done by her PCPs due to a lack of financial

---

[59]On September 10, 2008, plaintiff reported a 38-pound weight loss in the last three months and Dr. Mraz's assessments included abnormal weight loss. Admin. Rec. at 399-401.

[60]Admin. Rec. at 26.

[61]Admin. Rec. at 27.

[62]Admin. Rec. at 419.

[63]Admin. Rec. at 27.

resources.[64] An ALJ may not reject "a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]" <u>Regennitter v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1297 (9th Cir. 1999). This was not a clear and convincing reason to find plaintiff's statements less than credible.

The fourth reason given by the ALJ was that plaintiff's "earnings records reveal more income in 2001 and 2002 than in all her previous years of work combined",[65] even though plaintiff alleged a onset date of September 2, 1998. Plaintiff's earning records show earnings of $80,400 in 2001 and $73,010 in 2002.[66] Evidence that a claimant is working while claiming to be disabled is a valid reason for finding a claimant's statements less than credible. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006). Plaintiff points out that no testimony on this issue was taken and argues that without additional information as the nature of her earnings in 2001 and 2002, the ALJ may not simply conclude that they were due to work activity that is inconsistent with her claim of disability. However, "a claimant has the burden to prove [s]he is disabled." <u>Valentine</u>, 574 F.3d at 689. Plaintiff could have offered evidence to explain this inconsistency. Having failed to do so, the ALJ was entitled to conclude that plaintiff's 2001 and 2002 earning were inconsistent with her claim of

_____

[64]Admin. Rec. at 318, 397-98, 401, 416 & 419.

[65]Admin. Rec. at 29.

[66]Admin. Rec. at 245.

disability. This was a clear and convincing reason to find plaintiff's statements less than credible.

The fifth reason given by the ALJ was that plaintiff had only a sporadic work history "prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing employment is actually due to medical impairments...."[67] This was a clear and convincing reason to find plaintiff's statements less than credible. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's "poor work history" showing "little propensity to work in her lifetime" was clear and convincing reason to discount her testimony).

The sixth reason given by the ALJ was that there were inconsistencies in plaintiff's testimony. Plaintiff testified at the June 2010 hearing that it was the first time she had left her house in 2 years,[68] but later testified that she goes grocery shopping twice a month and goes to the library once a month.[69] Plaintiff also testified that she had stopped drinking and smoking,[70] but then later testified that she continued to smoke[71] and she told Dr. Bock that

---

[67]Admin. Rec. at 29.

[68]Admin. Rec. at 74.

[69]Admin. Rec. at 75, 79 & 83.

[70]Admin. Rec. at 73.

[71]Admin. Rec. at 82.

she continued to drink, although she reported "minimal" alcohol use.[72]  Plaintiff also told

Dr. Bock that she worked with her husband in his long-haul trucking business until his

death in 2008,[73] which was inconsistent with other statements plaintiff made about her

work history.  For instance, in one disability report, plaintiff stated that she worked at the

trucking company from 1994-1997.[74]  This was a clear and convincing reason to find

plaintiff's statements less than credible.

The ALJ erred as to one of the reasons he gave for finding plaintiff's pain and

symptom statements less than credible, but this error was harmless because the other

reasons constitute substantial evidence supporting the ALJ's ultimate conclusion that

plaintiff's pain and symptom statements were less than credible.  Batson v. Comm'r of

Social Security Admin., 359 F.3d 1190, 1197 (9th Cir. 2004).

Conclusion

Based on the foregoing, the Commissioner's decision is affirmed.  The clerk of court

shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 29th day of April, 2015.

/s/ H. Russel Holland
United States District Judge

---

[72]Admin. Rec. at 573.

[73]Admin. Rec. at 573.

[74]Admin. Rec. at 259.